IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

LEAH NICOLE CLARK and
MIKEAL CHAD CLARK,
individually and as parents and
guardians of JACKSON C. CLARK
and BROOKLYN P. CLARK and
BRITTANY COMPTON,

    Plaintiffs,

v.                                             Case No. 5:15cv276-MW/GRJ

WAL-MART STORES, INC. d/b/a
WAL-MART STORE #818 and
THOMAS "DOE,"

    Defendants.

_____/

## REMAND ORDER

    This is a negligence case.  The Clarks brought their claims in state court.  Defendant Wal-Mart Stores, Inc., removed the case to federal district court.  The Clarks move to remand the case to state court, asserting Wal-Mart's removal came too late.  The Clarks are right.  This order remands the case to state court.

I

    The Clarks filed their complaint in state court on June 15, 2015.  ECF No. 1-2, at 1.  The complaint generally alleges that Wal-Mart negligently failed to inspect

1

all of the tires on the Clarks' Chevy Suburban and warn them that one of the tires suffered tread-belt separation. According to the complaint, this led to a rollover car crash. Brittany Compton and Mikael, Jackson, and Brooklyn Clark suffered unspecified bodily injuries. Nicole Clark suffered injuries resulting in permanent quadriplegia.[1] The complaint does not demand a certain amount of damages. Nor is a specific amount of damages otherwise ascertainable from the complaint.

Wal-Mart received service of process on July 1, 2015. ECF No. 1-3, at 10. On July 20, 2015, Wal-Mart answered the complaint and served several discovery requests on the Clarks, including interrogatories and requests for production. ECF No. 1-3, at 18 (answer), 22–41 (interrogatories), 77–86 (requests to produce).

On September 14, 2015, a paralegal in the law firm representing the Clarks sent an email to the lawyer representing Wal-Mart in this case. ECF No. 4-2, at 3. The email included Ms. Clark's unsigned responses to the interrogatories. The responses indicate that Ms. Clark had lived in Kentucky with her family for the last 11 years and had, as a result of the accident, already incurred $615,765.39 in medical bills from 18 different medical providers in Alabama (where the accident happened), Ohio, and Kentucky. Ms. Clark signed the interrogatory responses on

---

[1] According to the pleadings, Ms. Clark's full name is Leah Nicole Clark. The parties refer to her as Nicole Clark. So this Court will do the same.

2

September 24, 2015.  ECF No. 1-3, at 56.  Wal-Mart got signed copies of this and other responses to interrogatories on October 7, 2015.  ECF No. 4-2, at 93–94.

On September 14, 2015, the paralegal in the law firm representing the Clarks sent Wal-Mart a FedEx package containing paper responses to the requests for production and a flash drive with an electronic version of those documents.  ECF No 4-2, at 2–3.  The documents produced included medical bills, tax returns for the previous 5 years, a Wal-Mart work order on the Clarks' vehicle, and transcripts of depositions of witnesses from the Clarks' lawsuit against the tire manufacturer. ECF No. 1-3, at 98.  It also included an economic loss report showing past life care expenses for Ms. Clark in the hundreds of thousands of dollars and future life-care plan expenses presently valued at $8,406,095.  ECF No. 4-2, at 65–66.  The Clarks' lawyer signed the written response to the request to produce.  Wal-Mart received the package on September 15, 2015.  ECF No. 4-2, at 3.

Wal-Mart filed its notice of removal on October 22, 2015.  ECF No. 1.  The notice of removal cites the "sworn" answers to the interrogatories as establishing diversity of citizenship and the minimum amount in controversy.  *Id.*

On November 20, 2015, the Clarks moved to remand this action to state court. ECF No. 4.  Wal-Mart opposes remand.  ECF No. 5.

II

Federal courts have limited jurisdiction. District courts have original jurisdiction over civil actions meeting the amount in controversy requirement which are between "citizens of different states." 28 U.S.C. § 1332(a)(1). The requirement for complete diversity of citizenship means that no plaintiff may be a citizen of the same state as any defendant. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806). The "matter in controversy" must "exceed[] the sum or value of $75,000." 28 U.S.C. § 1332(a).

Such an action brought in state court "may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." *Id*. § 1441(a). When a plaintiff suing in state court does not specify the amount of damages in the complaint, the defendant seeking to remove the case to federal court has to prove by a preponderance of evidence that the amount in controversy is more than $75,000. *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001). In considering the amount in controversy, courts may use their "judicial experience and common sense" to determine whether the jurisdictional amount is met. *Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010). Sometimes the amount in controversy is facially apparent from complaint even when it does not claim a specific amount of damages. *Id*. at 1061. It is not "conjecture,

speculation, or star gazing" when a removing defendant makes "specific factual allegations establishing jurisdiction and can support them (if challenged by the plaintiff or the court) with evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010).  The issue here, though, is not this Court's jurisdiction, but rather an asserted procedural defect in Wal-Mart's removal of the case.

The applicable procedural requirement is timeliness.  In general, a notice of removal must be filed within 30 days "after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." *Id*. § 1446(b)(1).[2]  But "if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.*

---

[2] A procedural defect—say, an untimely removal—may be waived. *See Whole Health Chiropractic & Wellness, Inc. v. Humana Med. Plan, Inc.*, 254 F.3d 1317, 1320 (11th Cir. 2001) (holding district court lacked authority to remand on its own motion based on a procedural defect).

§ 1441(b)(3).  Time limits like these are beneficial in a number of ways, such as reducing duplicative efforts and limiting the mischief associated with shoppers disappointed with a certain judicial forum seeking a better deal down the street.

Either way, the 30-day clock starts to run when the documents received by a defendant "contain an unambiguous statement that clearly establishes federal jurisdiction." *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1214 n.63 (11th Cir. 2007).  This bright-line rule "promotes clarity and ease of administration for the courts, discourages evasive or ambiguous statements by plaintiffs in their pleadings and other litigation papers, and reduces guesswork and wasteful protective removals by defendants." *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 824 (7th Cir. 2013); *Bosky v. Kroger Tex., L.P.*, 288 F.3d 208, 211 (5th Cir. 2002) (making the same point).  A bright-line rule works best when the reason for it is present in most situations where it is applicable.  Sometimes such a rule must paint with a broad brush to accomplish its purpose.  But courts do well when they keep a bright-line rule like this one in its lane.

This Court concludes that Wal-Mart had unambiguous statements clearly establishing federal jurisdiction as of September 15, 2015.  Although the standard for proving jurisdiction is different from the clock trigger,[3] the complaint itself

---

[3] *See Clark v. Unum Life Ins. Co. of Am.*, 95 F. Supp. 3d 1335, 1355 (M.D. Fla. 2015) ("The bright-line rule is distinct from the rule that a defendant may remove a case under subsection (b)(1) based on diversity jurisdiction if the amount in controversy is facially apparent

provided clues about the amount in controversy, primarily that one plaintiff is allegedly quadriplegic because of Wal-Mart's negligence.  The unsigned interrogatories and the other documents produced provided facts establishing complete diversity and that the amount in controversy exceeded the jurisdictional minimum.

Wal-Mart's reliance on the informal nature of the unsigned interrogatories to avoid the start of the clock is misplaced.  "The federal courts have given the reference to 'other paper' an expansive construction and have included a wide array of documents within its scope."  14C Charles Alan Wright et al., *Federal Practice & Procedure* § 3731 (4th ed. 2009).  It need not be a formal communication; an informal one will do if it provides enough notice.  *See Smith v. Bally's Holiday*, 843 F. Supp. 1451, 1454 (N.D. Ga. 1994).  Indeed, the Eleventh Circuit has approved of informal materials such as demand letters or an emailed estimate of damages.  *See Lowery*, 483 F.3d at 1213 n.62.  Wal-Mart has cited no authority actually supporting the proposition that the documents must comply with the formal requirements of state civil procedure to serve as an "other paper"

---

from the complaint. The former applies to timing disputes; the latter, to amount-in-controversy disputes. Whether the jurisdictional prerequisites are in fact met is a separate determination and often involves consideration of materials outside the state-court pleadings . . . In contrast, the timeliness inquiry is limited to examining contents of the clock-triggering pleading or other litigation paper; the question is whether that document, on its face or in combination with earlier-filed pleadings, provides specific and unambiguous notice that the case satisfies federal jurisdictional requirements and therefore is removable." (citations and quotations omitted))

establishing jurisdiction. It was enough that Plaintiffs gave facts clearly establishing diversity and the amount of damages at issue in this lawsuit.

Wal-Mart further argues that the document production was insufficient to start the clock because the documents produced were part of Plaintiffs' lawsuit against the tire manufacturer. ECF No. 5, at 8–9. So maybe, according to Wal-Mart, Plaintiffs were not seeking more than $75,000 in damages in this lawsuit.

This Court is not persuaded. The complaint describes Wal-Mart's alleged negligence causing Plaintiffs' injuries. Ms. Clark claimed in her interrogatory response that $615,765 in damages were "incurred as a result of the occurrence described in the complaint." ECF No. 1-3, at 50. Wal-Mart's answer raised defenses asserting, among other things, that others are to blame, and that Wal-Mart is entitled to a set-off. ECF No. 1-3, at 15–16. Wal-Mart's defenses are thus part and parcel of the controversy to be decided, not a threshold limit on the amount in controversy. Wal-Mart's figurative slumber through a blaring alarm clock is no one's fault but its own.

The 30-day clock started to run on September 15, 2015. Wal-Mart's removal on October 22, 2015, came too late. The Clarks' motion to remand is due to be granted.

For these reasons,

**IT IS ORDERED**:

1. Plaintiffs' motion to remand, ECF No. 4, is **GRANTED**.

2. The Clerk must take all steps necessary to **REMAND** this action to the Florida Circuit Court for the Fourteenth Judicial Circuit, Bay County, Florida.

3. The Clerk must close the file.

**SO ORDERED on December 10, 2015.**

<u>s/Mark E. Walker</u>
**United States District Judge**

9